UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
EVERETT DOWNS,

                        Petitioner,

    -against-                                          **MEMORANDUM & ORDER**

WILLIAM LAPE, Warden,                                08-CV-0092 (RJD)
    Coxsackie Correctional Facility,

                        Respondent.
-----------------------------------------------------------------X
DEARIE, Chief Judge.

      In his application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, petitioner Everett Downs claims that he was denied his Sixth Amendment right to a public trial because the trial court, implementing its policy of excluding spectators under a certain age, removed a twelve-year-old member of petitioner's family from the courtroom for the entirety of his six-day trial on robbery charges. In order that we may reach the issue, petitioner first urges us to look past the state court's conclusion that the issue was not preserved for appellate or collateral review. Because we find the state procedural ground adequate, we deny the application and dismiss the petition without reaching the constitutional question.

**FACTS**

      At approximately 7 p.m. on August 13, 2003, two armed men entered the office of a Queens auto body shop moments after Claudette Yates, a livery cab driver, had handed the shop's owner $4,000 in cash to retrieve her repaired vehicle. The intruders stole the $4,000 plus $2,500 from the shop's safe, the contents of the owner's wallet, cash from the other employee who was present, and cell phones from the owner, the employee, and Yates. Apprehended a

week later, petitioner was placed in a line-up and identified by the shop's owner as one of the gunmen; the other employee-victim also viewed the line-up but could not make an identification. Petitioner's accomplice was never apprehended.

At trial, the state offered no physical evidence but relied upon the testimony of the three victims. Petitioner also testified, insisting that he was misidentified, and that Yates had a strong motive to falsely identify him because, as his former lover, she was now jealous of his new relationship. Yates had also been briefly charged with criminal facilitation for her suspected involvement but the charge was dropped, although not in exchange for her trial testimony.

The jury convicted petitioner of four counts of robbery (two in the first degree, two in the second degree), one count of burglary in the second degree, and one count of criminal mischief in the fourth degree, but acquitted him of the two counts charging that he stole from Yates. He was sentenced to concurrent prison terms totaling eight years.

Before opening statements, defense counsel made the following remarks to the trial court:

> In the meantime, I do want to note for the record that there was a young man who, a family member of the defendant who had been asked by the Court to leave because of his age. He is 12 years old and the Court is indicating that it sets a limit of approximately 16 or 17 years of age.
>
> I informed the family of that and I'm sure they will comply. However, I do want to note, for the record, that I believe the young man is a suitable age and that he would not have been an obstruction to the proceedings.

This is the sole reference in the record relating to the substantive claim raised in the petition, and it reflects no contemporaneous response or correction by either the trial judge or the prosecution. Respondent's brief here likewise lacks any indication that defense counsel was

inaccurate in summarizing the trial court's action. We therefore accept that account of the court's ruling for purposes of our analysis.[1]

On direct appeal, but not before the trial court, petitioner framed the removal of his family member as a deprivation of his Sixth Amendment right to a public trial. A unanimous panel of the Appellate Division affirmed the conviction but declined to reach the merits of the Sixth Amendment question, finding that "[petitioner's] claim that he was denied the right to a public trial by the court's request that a 12-year-old boy be removed from the courtroom is unpreserved for appellate review." People v. Downs, 34 A.D.3d 596 (2d Dep't 2006). The Court of Appeals denied leave to appeal. People v. Downs, 8 N.Y.3d 880 (Feb. 13, 2007).

## DISCUSSION

**Controlling Standards: the Independent
and Adequate State Law Doctrine**

Federal courts ordinarily do not review a habeas petitioner's federal claim when the state court has determined that petitioner "had failed to meet a state procedural requirement" and therefore "decline[s] to address" the federal claim. Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). When denying review, the federal court must be satisfied that the state law ground on which the state court relied is "*independent* of the federal question and *adequate* to support the judgment." Lee v. Kemna, 534 U.S. 362, 375 (2002) (internal quotations omitted) (emphasis in

---

[1] Petitioner also asserts that Antoinette Downs, the youth's mother (and petitioner's wife) was "constructively removed" because she had to accompany the removed youth. The record, however, indicates that Ms. Downs was believed to be present for most of the trial (See T. 539).

original). Although the doctrine "rests on considerations of comity," the "adequacy of state procedural bars to the assertion of federal questions . . . is not within the State's prerogative finally to decide." Lee, 534 U.S. at 375 (internal quotation and citation omitted). Rather, "adequacy is itself a federal question," id., decided by the federal habeas court *de novo*. Monroe v. Kuhlman, 433 F.3d 236, 240 (2d Cir. 2006).

It is settled law that, "[t]hough a rule in general terms might be considered 'firmly established and regularly followed,' such a rule considered in the specific circumstances of a case might be inadequate to preclude federal habeas review." Monroe, 433 F.3d at 241 (internal quotation omitted). "This inquiry focuses on whether the case before the court fits within the limited category of 'exceptional cases' in which 'application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question.'" Clark v. Perez, 510 F.3d 382, 391 (2d Cir. 2008) (quoting Lee, 534 U.S. at 376).

In assessing adequacy, habeas courts examine:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

Cotto, 331 F.3d 217, 240 (2d Cir. 2003) (citing Lee, 534 U.S. at 381). The "Cotto factors are not a three-prong test: they are guideposts to aid inquiry." Clark, 510 F.3d at 391. Transcending the limited question of whether the state correctly decided the procedural question as a matter of state law, see Cotto, 331 F.3d at 247, the adequacy inquiry "evaluate[s] the state interest in a procedural rule against the circumstances of a particular case." Monroe, 433 F.3d at 242. We

must also show due regard for the "principles of comity that drive the [independent and adequate state law] doctrine," which "counsel that a federal court that deems a state procedural rule inadequate should not reach that conclusion lightly or without clear support in state law." Monroe, 433 F.3d at 241 (internal citation omitted).

**Analysis**

Focusing our Cotto analysis on the third guidepost, we consider whether trial counsel "substantially compl[ied]" with the procedural rule at issue, New York's contemporaneous objection rule, N.Y. C.P.L. § 470.05(2), given "the realities of trial" and, therefore, "whether demanding perfect compliance with the rule would serve a legitimate government interest." Cotto, 331 F.3d at 240.[2]

The rule provides:

> For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an "exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in response to a protest by a party, the court expressly decided the question raised on appeal. In addition, a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question

---

[2] The first Cotto guidepost, which examines the role, if any, that the alleged procedural violation played in the trial court's ruling, is not material here. See Monroe, 433 F.3d at 242 (first guidepost "is not very relevant" in contemporaneous objection cases because "the lack of objection by a party 'would not, almost by definition, be mentioned by the trial court.'"(internal citation omitted). The second Cotto guidepost, "whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented," does not require discussion because petitioner concedes the point by arguing exclusively that trial counsel *did* comply.

of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered.

Petitioner argues that his trial attorney complied with this rule, and his position is not without some appeal. Read literally, the rule's requirements are modest, and defense counsel's remarks, however threadbare, could be said to satisfy them. By voicing disagreement with the youth's removal, counsel arguably "made his position with respect to the [court's] ruling known to the court" and thus "registered" a valid "protest" within the plain meaning of those statutory terms.³ Accord Resp. App. Br. at 11 ("[i]f [petitioner] had any concern relating to the boy's removal, he was required to voice it so as to protect the record"). Alternatively, the youth's attendance during jury selection was arguably an "implied" request, within the meaning of the rule, that the youth be allowed to continue to attend. Trial counsel's remarks are also "timely" within the letter of the rule because counsel spoke up before openings, and the rule requires only that the protest be registered "when the court had an opportunity of effectively changing" its ruling.

Yet there is the rub. Although counsel spoke *in time* for the trial court to change its ruling, we are not convinced that his remarks occasioned, as they should have, a meaningful opportunity for the court to take corrective action. See, e.g., People v. Luperon, 85 N.Y.2d 71, 78, (1995) (§ 470.05(2) "require[s], at the very least, that any matter which a party wishes the

---

³ As the Second Circuit has recognized, "the word 'protest' is not explicitly defined in the statute." Cotto, 331 F.3d at 243 n. 14. Instead, "[the statute's] explanation of when a protest is 'sufficient' for preservation purposes . . . is used to determine when a 'a protest thereto was registered by the party claiming error.'" Id. The protest requirement, therefore, is satisfied if either (1) "the party made his position with respect to the ruling known to the court," *or* (2) "if in response to a protest by a party, the court expressly decided the question raised on appeal." Id. (quoting Section 470.05(2)).

appellate court to decide have been brought to the attention of the trial court at a time *and in a way* that gave the latter the opportunity to remedy the problem and thereby avert reversible error") (emphasis added); Preiser, *Practice Commentaries*, McKinney's Cons. Laws of New York (1994), Book 11 A, CPL 470.05, at 12 ("the rules . . . are best understood *in the context of the purpose for requiring a protest*, which is to call the trial court's attention to the claimed error while there is still time to correct it") (emphasis added); Cotto, 331 F.3d at 246 ("in evaluating whether [petitioner] 'substantially complied' with CPL § 470 . . . we return to the asserted state interest behind the contemporaneous objection rule—to ensure that the parties draw the trial court's attention to any potential error while there is still an opportunity to address it"); Osborne v. Ohio, 495 U.S. 103, 125 (1990) (state contemporaneous objection rules rest on "the general principle that an objection which is ample and timely to bring the alleged federal error to the attention of the trial court *and enable it to take appropriate corrective action* is sufficient to serve legitimate state interests, and therefore sufficient to preserve the claim for review") (emphasis added).

      To be sure, counsel did not have to utter the words "Sixth Amendment" or the "right to public trial." See, e.g., Cotto, 331 F.3d at 245 (to preserve issue under 470.02(5), counsel was "not required to use[] specific words 'Confrontation Clause'" because the mandates of the Sixth Amendment are "certainly no secret to criminal law practitioners and judges"). Nevertheless, our adequacy mandate is to make a "case-specific inquiry" that is "guided by the 'realities of trial,'" id. at 244, 246 (quoting Lee, 534 U.S. at 381), and the realities of *this* case, we find, required something more of counsel. Specifically, we agree with respondent that the party seeking to vacate an otherwise valid conviction on the ground that he was denied his constitutional right to a

public trial bears the responsibility for generating a record that makes meaningful post-conviction review feasible, a level of development lacking in the record now before us.

To illustrate the point we need only endeavor to reach the merits and apply the controlling Supreme Court closure standards of Waller v. Georgia, 467 U.S. 39 (1984), to the facts before us. Under Waller, in order to overcome the "presumption of openness" created by the Sixth Amendment public trial guarantee, the closure or exclusion must serve an "overriding interest" and be "no broader than necessary," and the trial court "must" consider "reasonable alternatives" and "must" make findings adequate to support its action. 467 U.S. at 48.[3] This record, however, would almost automatically fail Waller, for no overriding interest has been identified, the court's consideration of alternatives is not evident on the record, and of course there are no findings. But we are not convinced that this superficial analysis means there has been a glaring constitutional violation. The trial judge probably excluded the youth for appropriate reasons, i.e., to minimize possible disruptiveness or to shield him from testimony about his family member's criminal activities.[4] We also have little doubt that, prompted by an authentic and unequivocal objection,

---

[3] The Second Circuit, focusing on Waller's use of "must," takes the "adequate findings" requirement quite seriously. See, e.g., Yung v. Walker, 468 F.3d 169 (2d Cir. 2006); Carson v. Fischer, 421 F.3d 83 (2d Cir. 2005).

[4] See, e.g., Covington v. Lord, 275 F. Supp.2d 352, 358 (E.D.N.Y. 2003). There, Judge Weinstein found that the state court did not unreasonably apply Supreme Court law when it denied a defendant's claim that the removal of her six-year old son from the courtroom denied her Sixth Amendment right to a public trial. The trial court had explained:

> I don't think it is wise for a six year old to see his mother on trial for murder and testimony about her possible—. . . I can't be concerned whether his mother wanted him here or not. He will not be permitted to stay in this courtroom during the trial. I don't think an experience like that should be inflicted on a six year old. And I think the mother who asks for that ought to have second thoughts

the trial judge would have better voiced those reasons, considered alternatives to the pre-emptive removal, and made the necessary findings. Of course we cannot know for sure, and that is why we believe the real villain here is the underdeveloped record, which forecloses meaningful substantive analysis of the constitutional question. Any other result, we find, would hold jurisprudential reality hostage to a pedantic reading of "protest" in Section 470.05.

In short, particularly because reversal is automatic when the public trial right has been denied, Waller, 467 U.S. at 49-50, we conclude, as common sense dictates, that a party cannot properly seek habeas relief on the ground that a trial court failed to weigh courtroom attendance alternatives that it was never asked to consider, or that the court did not issue removal-justifying findings that it was never asked to make. Cf. Wainwright v. Sykes, 433 U.S. 72, 89 (1977) (cautioning courts about the "sandbagging" that procedural forfeiture rules reasonably discourage). The petition, therefore, does not present one of the "exceptional cases," Lee, 534 U.S. at 376, in which the state ground is inadequate to stop consideration of a federal question.[5]

---

about that. He won't be permitted in the courtroom during this
trial. Not if he is six.

Id. Judge Weinstein concluded that "[t]he trial court acted properly as *parens patria,*" id., and the Second Circuit affirmed. 111 Fed. Appx. 647 (2d Cir. 2004).

[5] For the sake of the parties, who devoted considerable attention to the unsparing analysis of the preservation issue in Garcia v. Lewis, 188 F.3d 71, 82 (2d Cir. 1999), we note that we do not decide the applicability of that decision to the adequacy question in this case. Neither the parties' briefs, nor the details of the decision itself, make entirely clear which feature of the trial colloquy in that case was the dispositive shortcoming. There may also be reason to question how much of Garcia, which pre-dates Lee, survives Cotto.

**The Merits**

Because we have concluded that the independent state law ground was adequate, we of course need not reach the merits of petitioner's constitutional claim. Ordinarily we would proceed to do so in any event, as an alternative basis for denying the petition, but for reasons we now explain, we refrain from deciding the constitutional question in this case.

Lacking a state court ruling on the subject, any analysis here would of course involve more than just Waller—since we would not be limited to considering whether the state decision was contrary to Supreme Court holdings—but exactly how much more is a question not yet addressed by the Second Circuit and, we believe, too open to resolve here.

The parties recognize that if the Appellate Division had denied the claim on the merits, even in an alternative holding, our analysis would begin and end with Waller. See Rodriguez v. Miller, 537 F.3d 102, 107-109 (2d Cir. 2008) (Waller is the *only* applicable Supreme Court "holding" for purposes of deference to state court rulings under section 2254(d); Gibbons v. Savage, 555 F.3d 112, 116 (2d Cir. 2009)(same), cert. denied, __ S. Ct. __, 2009 WL 1106767 (Oct. 5). But because the state court did not reach the issue, the parties rely here heavily on parts of *other* Supreme Court decisions and recent Second Circuit decisions that it is clear would not otherwise be part of the constitutional equation.

Petitioner points to a line of cases originating with a single sentence from In re Oliver, 333 U.S. 257 (1948): "without exception all courts have held that an accused is at the very least entitled to have his friends, relatives and counsel present, no matter with what offense he may be charged." Oliver, 333 U.S. at 271-72. Although the Second Circuit last year declared this language inapplicable to AEDPA-deference cases because it is not Oliver's holding, Gibbons,

555 F.3d at 116, a plenary consideration of the constitutional question could hardly ignore its uncompromising tone, or the Circuit's steadfast loyalty to it, pre-Gibbons. See, e.g., Carson v. Fischer, 421 F.3d at 91-2 (cataloguing cases). As Carson documents, the Circuit "takes very seriously" an individual's right to have family members present at his criminal trial and, as a result, has frequently granted habeas relief pre-AEDPA "on the ground that the exclusion of family members without a particularized inquiry into whether the exclusion was necessary to advance an overriding interest violated the Sixth Amendment." 421 F.3d at 91 (citing cases). Carson also recognizes that "[e]ven in cases decided pursuant to AEDPA"—but of course pre-dating Gibbons— the Court "ha[s] consistently required affording special considerations to the presence of defendant's family members and friends." Id. at 91-2.

Respondent, on the other hand, relies on Second Circuit decisions finding the exclusion of family members for limited periods of time to be "trivial" and therefore not even "closures" within the meaning of the Sixth Amendment. See, e.g., Gibbons, 555 F.3d at 113 (exclusion of defendant's mother, the only spectator at trial, only during the first afternoon of jury selection, "was unjustified" but "was too trivial to require overturning the conviction"); Carson, 421 F.3d at 89-92 (exclusion of defendant's ex-mother-in-law during testimony of undercover officer held to be too "limited," both "in time" and "in scope," to warrant habeas relief, because closure lasted for only three days of a one-month trial, and several other family members were in the courtroom at that time); Peterson v. Williams, 85 F.3d 39 (2d Cir. 1996) (following proper closure during undercover officer's testimony, courtroom remained closed, inadvertently and briefly, until court realized it had not been reopened but none of the participants noticed, held to be "too trivial" to amount to Sixth Amendment violation"). But see Gibbons, 555 F.3d at 120 (triviality analysis is

"speculat[ive] because the Supreme Court has never ruled on such a question").

Assuming the record lent itself to meaningful plenary review, we would find application of these competing lines of authority problematic. Oliver and its progeny do not make clear *how much* "special concern" is warranted when a family member is excluded, and the closures deemed "trivial" were all of short duration. Can an exclusion for an entire six-day trial *also* be declared trivial because it involves only a single person? Wherever the answer may fall on the triviality scale, what offsetting adjustment might then be made because the person is a family member? What further adjustment, if any, because the family member is only 12 years old?

Adding even more uncertainty is the possibility that there might be more than two answers to the constitutional question—one under Waller, and another under Waller plus Oliver plus triviality—with the difference turning on whether the Appellate Division elects in the first instance to rule alternatively on the merits.

Each of these questions, essential to a full analysis of petitioner's constitutional claim, is simply too open to be tackled in the first instance by a district court, and we therefore reluctantly but prudently decline to reach the merits in this case.

## CONCLUSION

For all of the foregoing reasons, the application is denied and the petition is dismissed. For the same reasons, and out of an abundance of caution, we also conclude that issuance of a certificate of appealability pursuant to 28 U.S.C. § 2253 is appropriate. See Slack v. McDaniel, 529 U.S. 473, 484 (2000) ("[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the

petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling"). The Clerk of the Court is directed to close this case and issue petitioner a certificate of appealability.

SO ORDERED.

Dated: Brooklyn, New York
       October 30, 2009

                                                  s/ Judge Raymond J. Dearie

                                                  RAYMOND J. DEARIE
                                                  United States District Judge